New Orleans & N. E. R. Co. *v.* Matthews *et al.*

[95 South. 133. No. 22995.]

1. DAMAGES. *Loss due to inability to countermand loading orders, because of false telegram by carrier, necessitating trip by shipper, held not recoverable.*

Conceding that telegram sent shipper of potatoes by railroad company, stating that they were unclaimed, was false, and that it necessitated a trip by the shipper to New Orleans, and that such trip

made it impossible for him to countermand orders for the loading of other cars, which were accordingly sold at a loss, because of a slump in the market, such loss was not efficiently or proximately caused by the telegram, and was too remote to be recoverable for mere negligence in sending the telegram.

2. DAMAGE. *Carrier liable only for damages naturally flowing from negligent sending of false telegram to shipper.*

A railroad company, negligently sending a shipper of potatoes a telegram, falsely stating that they were unclaimed, was liable only for such damages as would naturally flow from the negligent act of sending the false telegram.

3. DAMAGES. *Only expenses of trip necessitated by false telegram and loss of time recoverable.*

Where telegram sent shipper of potatoes by railroad company, falsely stating that they were unclaimed, caused the shipper to make a trip to New Orleans, the only damages recoverable were such as he paid out for expenses on such trip and for loss of time.

APPEAL from circuit court of Lamar county.

HON. WOOD MAGEE, Special Judge.

Action by M. W. Mathews and others against the New Orleans & Northeastern Railroad Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

*Bozeman & Cameron,* for appellant.

Damages sued for not proximate result of sending telegram and too remote and speculative. This conclusion seems to us to follow the mere reading of the declaration. The allegation of the declaration is that the sending of the telegram on October 9th received by plaintiff on October 10th (Sunday) caused him to go to New Orleans and that this in turn caused him to be absent from Purvis on Monday, October 11th; that by reason of his absence from Purvis on Monday the 11th, he was prevented from notifying the potato growers in and around Baxterville and Carnes, as he had intended doing, not to load and ship the potatoes, which he had previously arranged for them to load and ship from Baxterville and Carnes; that these

growers lost money on the potatoes shipped from Baxter-ville and Carnes, by reason of a break in the market, in the amount of seven hundred and twenty-five dollars and he sues the N. O. & N. E. R. R. Company for this loss, not by reason of any act or negligence of the N. O. & N. E. R. R. Company in connection with the shipment from Baxter-ville and Carnes, which are on the G. & S. I. R. Railroad; but because by sending him the telegram about an entirely different matter the N. O. & N. E. was the occasion of his being away from Purvis on October 11th.

The damages sued for and allowed were not the proxi-mate result of the breach of duty alleged. This proposi-tion has no doubt been in the court's mind ever since the consideration of the case was begun. The damages sought here are certainly unusual, far-fetched and speculative. They could not have possibly been in the contemplation of the parties at the time of the wrongful act relied upon, and could not possibly be said to be the natural result of the said alleged wrongful act. The breach of duty asserted by the plaintiff was the sending of a false telegram. Plaintiff wholly failed to introduce any proof tending to show that the telegram was either false or fraudulent, or that it was not sent in entire good faith. But assuming that it was false can it be possibly contended with any merit that the consequences which gave rise to the damage claimed were the natural and usual and ordinary results which would follow the receipt of such a telegram?

In the first place it was wholly unnecessary that Mat-thews should have gone to New Orleans. The wires were open to him and a telegram or a long distance call to Good-man-Beer & Company would have saved his trip. Ordi-narily a man would have pursued this course, but even assuming that the trip to New Orleans was the proximate and necessary result of the sending of the telegram it is still a far cry to the remote and speculative damages which the plaintiff conceives his trip to have occasioned.

The railroad company knew nothing of Mr. Matthews' intention to ship other potatoes. It knew nothing of the

condition of the potato market or to the difficulty plaintiff would have in notifying his associates of a market decline. It had no connection with the handling of these potatoes; the delay which caused them to rot, or the circumstances which caused them to yield such a low return. Even the old Squibb case would stir restlessly in its moth-eaten folio at the conception of a possible recovery under circumstances such as those involved in this case.

This court has recognized the principles we are asserting in an unbroken line of decisions. Witness, for instance, the case of *A. & V. Railway Company* v. *McKenna*, 104 Miss. 843, 61 So. 823, where the plaintiff shipped her household goods from Bolton to Vicksburg, admonishing the railroad agent at the time of the very great need of these articles. They were greatly delayed in reaching her, and as a result she and her family were made sick. The court below permitted a recovery for this damage, and this court reversed the case and rendered a judgment for the railroad company because the damages awarded her were not those which may be considered as arising naturally or in the usual course of such transactions.

Again in the case of *Railroad Company* v. *Lambert*, 99 Miss. 310, 54 So. 836, a train failed to stop at the depot to discharge Mrs. Lambert but pulled on some distance past it. After a little wait she debarked from the train and walked to the station in the rain. This court refused to permit consequent damages for the reason that the injury complained of was not the proximate result of the defendant's act in carrying Mrs. Lambert by, but resulted, however, from her own act of getting up and walking to the station.

A later case is that of *Y. & M. V. Railroad Company* v. *Williams*, 114 Miss. 236, 74 So. 835, with which this court is no doubt familiar. Likewise in the case of *Y. & M. V. Railroad Company* v. *Cox*, 114 Miss. 49, 74 So. 779. Without commenting on the holding of the different cases, we respectfully refer the court to the following cases all of which, according to our idea, announce the principles

which support our contention in this regard. *Howell* v. *Railroad Co.,* 75 Miss. 242; *Y. & M. V. R. R. Co.* v. *Consumers I. & P. Company,* 67 So. 657; *R. R. Company* v. *Ragsdale,* 46 Miss. 458; *Amer. Express Co.* v. *Jenkins,* 86 Miss. 329; *Railroad Co.* v. *Lyon,* 66 So. 209, 107 Miss. 777; *Railroad Company* v. *Jacobson,* 112 Miss. 158, 72 So. 889; *Amer. Express Co.* v. *Burke & McGuire,* 61 So. 312, 104 Miss. 275; *Y. & M. V. Railroad Co.* v. *Allen,* 63 So. 527, 184 Ala. 474; *I. C. Railroad Co.* v. *McSwain,* 6 So. 786, 108 Miss. 443; *N. O. & N. E. R. Co.* v. *Miner Saw Mfg. Co.,* 78 So. 577, 117 Miss. 646.

Referring to each error assigned: We submit in conclusion that the plaintiff stated no cause of action in his declaration; that he showed no right in himself to bring the suit and no damage sustained by him individually; that he failed entirely to prove the case stated in the declaration by competent proof; that he asserted and proved no damages which could possibly be said to have been caused by the breach of duty relied on; and that the case should be reversed and judgment entered for the defendant appellant.

*W. A. Shipman,* for appellee.

*The plaintiff had the right to bring this suit.* "While an unincorporated association cannot sue directly, yet it may bring suit through an agent, especially appointed for that purpose." 5 C. J., sec. 103, page 1366.

"If the legal title to an obligation is vested in an officer of the association for its benefit, he may sue in his own name to enforce it. Indeed, if a contract is made with a member of an association, he alone may sue thereon, and where the legal estate to property of an association is vested in a trustee whose duty it is not only to hold the property but to take charge of the property, a suit to protect the property rights of the association should be brought in the name of the trustee." 5 C. J., sec. 104, page 1366.

"In some jurisdictions it is expressly provided by statute that actions may be brought by an incorporated association

in the names of specified officers of the society." Ibid, sec. 106, same page. The law applicable to the question of proximate damages is clearly stated and defined in the case of *Silver* v. *Kent,* 60 Miss. 127.

The doctrine announced in the foregoing rule, the doc-trine of wanton and wilful injury inflicted makes the defendant liable for all the consequences of his fraudulent, wilful and oppressive acts, and as cited in our brief to the court below, this doctrine was invoked most masterfully and effectively by senior opposing counsel in the case of *Maguirk* v. *Western Union Tel. Co.,* 79 Miss. 632, 31 So. 206. In that case the telegram was wantonly and wilfully sent by the agent of the telegraph company, and the contents were false. It was signed: "Lola Mc." by the agent, without knowledge on his part what the result might be upon the reputation of the young woman. Her reputation was in fact damaged, and although the agent of the defendant might have, and doubtless did have, it in his mind merely to perpetrate a joke on the sendee of the telegram, never-theless, the young lady's good name suffered as a consequence of his wanton and wilful act, and the court very righteously held that the defendant was liable for such injury. The doctrine announced in the two cases cited, and there are so many other authorities which we do not deem it necessary to cite, that we find no case in which this honorable court has ever departed therefrom.

We submit that all the cases cited in the brief of counsel for the appellant, where in point at all, sustain our every contention. However, the most of them bear about the same relation to this case as the tail of a dog bears to the barking of the animal; both emanate from the dog, and, therefore, are peculiar to the animal. In a proper case the law cited by counsel for appellant cannot be complained of by us or any one else.

Confident, therefore, that this honorable court, under its rules and the law applicable to such cases, seeing that substantial justice has been done in the premises, will affirm the case, we most respectfully beg to submit it for review on the law and the facts.

HOLDEN, J., delivered the opinion of the court.

The railroad company appeals from a judgment for six hundred and forty-five dollars rendered in favor of appellee Matthews as damages resulting on account of the sale of two cars of potatoes at a loss, all of which is claimed to have been caused by a false telegram sent by the railroad company from New Orleans to appellee Matthews at Purvis, Miss. The facts of the case necessary to understand the decision are as follows:

On October 5, 1920, the appellee Matthews, while representing a growers' association, the members of which lived near Purvis, and the appellant railroad, in Lamar county, Miss., shipped a carload of sweet potatoes over the appellant railroad to Goodman, Beer & Co. at New Orleans. The potatoes reached New Orleans on the 8th day of October, and on the following day, the 9th, the railroad agent at New Orleans sent a telegram to Matthews at Purvis, telling him that the car of potatoes he had shipped to Goodman, Beer & Co. was unclaimed. This telegram was filed at six o'clock p. m. on that day, which was Saturday. The telegram was delivered to Matthews the next day, Sunday, the 10th, and he, believing the telegram stated the truth, immediately went to New Orleans to look after the car of potatoes, which caused him to be absent from Purvis all of Sunday and Monday.

It is shown by the testimony of appellee Matthews that, before he received the telegram with reference to the car of potatoes at New Orleans, he had ordered three other empty cars for the shipment of other potatoes from different points on the Gulf & Ship Island Railroad; that he was advised and knew by current market quotations that the potato market had slumped, and was declining in price beyond and below the price at which he was willing to sell, and before receiving the telegram or departing for New Orleans he made special effort to prevent the loading of the other three cars with potatoes; that he got word to the growers who were to load in one of the cars, but was unable to notify the other growers which were to load in the

other two cars; that his failure to notify these growers was on account of his having to go to New Orleans to see about the car of potatoes there, which the telegram notified him was unclaimed; that he could and would have countermanded the orders for loading out the last two cars, had he been in Purvis on Monday, instead of being in New Orleans; that on account of his failure to notify the growers the two cars of potatoes were loaded and shipped at a time when the price was so low, as compared with the price two weeks later, that the sale resulted in a loss of the six hundred and forty-five dollars recovered in the judgment.

To state it in a shorter way: The plaintiff below, Matthews, claimed that the false telegram sent him by the agent from New Orleans, telling him the car shipped to Goodman, Beer & Co. was unclaimed, which was an untrue statement, because the car had been delivered, caused him to go to New Orleans and thereby fail to notify the potato growers to not load the other two cars of potatoes, and that if he had not gone to New Orleans he would have notified the growers to not load the two cars, and thus have prevented the resulting loss due to the then low price for which he was compelled to sell them.

There are several errors assigned for reversal, but we shall notice only one point, because this will end the case, and it is unnecessary to consider the others. It is contended that the damages claimed and allowed in the case are remote and collateral, for which no recovery should be allowed. We thing the position is well taken, and believe the simple statement of the case is sufficient to show the correctness of this view.

The damages alleged to have been sustained did not proximately result from the act of the railroad company in sending the false telegram to Matthews; the damages grew out of a different and disconnected transaction, remotely related to the negligent act, and not anticipated. It is not clear from the record that the telegram sent, which was a gratuitous notice, was false; but, concede for the moment that it was false, there is nothing to show the negligence was wanton or willful. It is also uncertain

whether the telegram necessitated the visit of Mathews to New Orleans, but concede for the discussion that it was reasonably necessary for Matthews to go to New Orleans in pursuance of the telegram.

The record does not clearly show that Matthews could not have notified the growers with reference to loading the last two cars before he left for New Orleans or afterwards, before they were actually loaded and shipped, he knowing the conditions when he received the telegram and left for New Orleans; but conceding that the visit was the cause of his failure to notify the growers in time to prevent the loading of the last two cars, and conceding for the purpose of argument that Matthews was such a person as could bring a suit for a defunct organization, his connection with which was merely on a commission basis, and granting that the opinion evidence in the case as to the price received and the market value of the potatoes when sold and the value two weeks later, is competent evidence, and not speculative, yet the damages sustained by the growers on the two cars of potatoes had no connection, except very remotely, with the negligence of the railroad agent in sending the telegram.

The railroad company was liable only for such damages as would naturally flow from the negligent act of sending the false telegram; the act was mere negligence on the part of the railroad company, and it could not be reasonably anticipated that the false notice about the car previously shipped to New Orleans would have the effect of causing the appellee to fail to notify the potato growers with reference to the subsequent shipment of the two cars of potatoes on the Gulf & Ship Island Railroad. If the appellee could recover such damages as claimed here for the two cars of potatoes, he could as well claim damages under the same circumstances for a thousand cars. His loss on the last two cars was not efficiently or proximately caused by the telegram, or the mistake about the car at New Orleans; it was a collateral loss, for which the railroad company was not responsible, any more than it would have been

liable for any other business loss to the appellee in a different business transaction which occurred while he was away at New Orleans attending to the car of potatoes previously shipped to that point. 8 R. C. L., pp. 458 and 462. The record discloses that his trip to New Orleans proved useless and unnecessary, because he found the car there was not unclaimed, but had been delivered to the consignee before he left Purvis.

The telegram to appellee Matthews with reference to the car at New Orleans did not justify him in knowingly abandoning his other business interests of every kind at Purvis, and going to New Orleans, and then afterwards charging the railroad company with all of his business losses, due to his absence from home. The only damages that are recoverable are such as appellee paid out for expenses, and loss of time, on the occasion of his trip to New Orleans. In view of the conclusion reached above, the judgment of the lower court is reversed and the case remanded.

*Reversed and remanded.*